R. P. W. Sims et al. v. N. B. Warren.

1. Taxation. *Identification of land. Ascertainment of value.*

It is a constitutional prerequisite to valid taxation of land that there be some way of identifying it and ascertaining its value. The mode of doing this is for the legislature to prescribe.

2. Assessment. *Sufficiency of description. Certainty of valuation.*

The requisite identification might be by the number of acres of a larger given tract, if all the land in such tract is assessed at the same rate. But otherwise, if there are other parcels in the tract assessed in like manner only by the number of acres and the valuations of the parcels are different. In such a case it is impossible to ascertain with certainty what is assessed, or at what value.

3. Same. *Act of March 5, 1878, construed.*

The revenue act of March 5, 1878, provides in relation to assessments, in substance, that giving the section, township and range shall be sufficient description on the roll for any subdivision of the section, and parol testimony may be resorted to for the ascertainment of the subdivision

intended to be assessed; and that a proper description of part of a section shall make the assessment of the other part of it, by whatever description, being insufficient to identify such other part, embrace all the rest of the section. *Held*, that this provision cannot apply to validate an assessment which creates uncertainty as to the amount of the charge on the land.

FROM the chancery court of Itawamba county.

HON. BAXTER McFARLAND, Chancellor.

Appellee, claiming under a tax collector's deed which conveyed to him " 80 acres of the S. E. ¼, Sec. 10, T. 8, R. 8, in Itawamba county," filed his bill in this case to confirm the tax title, alleging therein that said deed conveyed to him all the N. ½ of the S. E. ¼ of said section, this being the land intended by the description in the deed.

The main controversy is as to whether the assessment of the land is void for uncertainty. The sale for taxes was made on the first Monday of March, 1881, for the delinquent taxes of 1880. The assessment, therefore, under which the sale occurred was that of 1879, and this quarter section is assessed on the roll for that year as follows :—

| Name of owner. | Division of section. | Section. | Town-ship. | Range. | Value per acre. | Total valuation. |
|---|---|---|---|---|---|---|
| W. A. Stephens | 40 a. S. E. ¼ | 10 | 8 | 8 | 2.50 | 100 |
| —— —— | 120 a. S. E. ¼ | " | " | " | 1.00 | 120 |

The bill of complaint, after setting out the assessment and purchase of the aforesaid deed, alleged that the taxes on the S. ½ of the S. E. ¼ of said section were paid for 1880, by the owners thereof, and that the N. ½ of the S. E. ¼ of the said section was the land on which the taxes were delinquent, and to which the sale was intended to apply. The appellants were made parties to the bill, and interposed a demurrer which was overruled. Whereupon they answered, averring that the assessment was void for uncertainty, and the sale for taxes conferred no title.

One Morris testified that he was the owner of the S. W. ¼ of

S. E. ¼ of said section, and paid the taxes on said land for that year. Another witness, Cummings, testified that he was the owner in 1880, of the S. E. ¼ of S. E ¼ of said section, and that he paid the taxes thereon for that year. Both these witnesses exhibited their tax receipts, each of which shows the payment of the taxes for 1880 upon "40 acres of the S. E. ¼ section 10, T. 8, R. 8." They also testified that appellants owned, and were in possession in 1880, of the N. ½ of the said S. E. ¼.

The decree of the court was in favor of the complainant, confirming his tax title, and from this decree the defendants appeal.

*Clifton & Eckford* and *Brame & Alexander,* for the appellants.

The deed presents a patent ambiguity. Whether the description is good or bad is to be determined in the first instance, from the face of the deed and the assessment roll. Then, if extrinsic evidence is admissible at all, there is no limit to the means that may be used to identify. *Bowers* v. *Andrews,* 52 Miss. 596.

We are not called on to discuss whether under the evidence, the complainant has identified the tracts which Morris and Cummings intended to pay on, and inferentially to judge as to what parcel the tax collector intended to sell. There is nothing on the face of the deed or the assessment roll that furnishes a guide to conduct us to the tract really sold. The only certain thing on the roll is the description of the quarter section. The description in the deed is, "80 a. of the S. E. ¼." What 80 acres is meant? Can we find from the roll? There are only two assessments in that quarter section, the one assessing 40 acres to W. A. Stephens, and the other 120 acres in blank. If we assume that this 80 acres is a part of the 120 acres assessed in blank, we would still have to know what 120 acres was thus separately assessed. There is nothing in its description to show.

We would next look to find if the 40 acres comprising the rest of the quarter section are identified in any way; but we find that the description of this is as uncertain as that of the 120 acres, except that the name of the supposed owner is mentioned. But even if it were permissible to take the name of "Stephens" as a

clew, we find that Stephens is a myth, and no one by that name owns any of the land in the southeast quarter. Practically we have the whole quarter section assessed in blank.

Even if the description was curable, the evidence wholly fails to identify the 80 acres sold. Neither Morris nor Cummings can show what they paid on. Merely knowing what their deeds called for, or what they owned, does not identify what was actually paid on. Their tax receipts are as uncertain as the description in the roll or the deed.

The power of sale does not depend on the purpose of the owner. *Dodds* v. *Marx*, 63 Miss. 443. Mere intention cannot make facts. We look to facts to make certain the intention, and not the intention to make certain the facts; otherwise there is an end to all patent·ambiguities.

Surely whether the deed or assessment is certain or uncertain in its description cannot depend on a mere mental process. Suppose these witnesses should swear that the land they intended to pay on was that which included the most valuable land in the quarter section. Who could deny this intention? How could they be convicted of perjury? The description would be uncertain, movable and shifting anywhere over the 160 acre tract, until Morris and Cummings should refresh their memory, and tell what was in their minds when they paid their taxes. See *Brame* v. *Moore*, (MS. op.).

Even under the act of 1878, relied on, this description cannot stand without more to identify the assessment than the section, township and range. There could in most cases be no definite ascertainment, and we doubt if a forfeiture under such an assessment would be due process of law.

The W. A. Stephens tract is assessed at $2.50 per acre, while the rest of the quarter section is assessed at $1. An examination of the amount of taxes paid by Cummings will show that he paid as much state taxes as was due on the 120 acres separately assessed, whereas, if he intended to pay on the W. A. Stephens tract, the amount paid does not correspond with the amount due on it. This illustrates the impossibility of identifying either the lands paid on or the land sold under this assessment.

*Newman Cayce,* for appellee.

It is immaterial whether land is assessed to the owner, to unknown, or in blank.   No failure to observe any statutory requirement as to the manner of assessing land will vitiate the assessment if it is described so that by aid of parol evidence it can be identified. Any description that will furnish a sure guide for its ascertainment is sufficient.   Code 1880, § 490 ; Acts 1878, 34.

This land was assessed in 1879, and the assessment must be construed under the provisions of the revenue act of 1878.   Among other provisions of this act is that no failure to observe any of the requirements of the statute in reference to describing land shall affect the assessment or sale, if the section, township and range on which the land is situated is properly entered upon the roll, and it may be shown by parol testimony to what particular subdivision an assessment or sale was intended to apply.   In this case, not only the section, township and range are correctly given, but the particular quarter section, and, if the part of the quarter section which was forfeited can be shown by parol, then the very case is presented which the statute allowing parol testimony was intended to embrace. Manifestly that portion of the quarter section on which the owners had paid their taxes could not be delinquent, while that part on which no taxes had been paid for 1880, was delinquent ; and such delinquent land was the land intended to be sold, and to which the sale and deed were intended to apply.

The bill avers that the north half of the south-east quarter was the land delinquent, and to which the sale was intended to apply. These allegations are neither admitted nor denied by the answer, and therefore, are to be taken as admitted.   Code of 1880, § 1892 ; *Colbert* v. *Henley,* 64 Miss. 375.

The testimony of Cummings and of Morris, each owning forty acres of this quarter section, shows that each of them paid their taxes for 1880.   Their testimony also shows that the north half of said quarter section was owned by and in the possession of appellant in 1880.

Payment of taxes by the owner on land assessed by an imperfect description is sufficient to protect the land owner, because the parol

proof applied the payment and identified the land intended. *Dodds* v. *Marx*, 63 Miss. 443. That the evidence to identify was competent in this case, see *Reber* v. *Dowling*, 65 Miss. 259.

When the entire tract is entered upon the roll (regardless of the land in which its various subdivisions may be listed), the charge is fixed, and when the taxes on any portion of the land are unpaid, the delinquency of the unpaid portion occurs. The point of investigation is not as to how the land is subdivided on the roll, nor as to the land being listed to its owners, nor as to how many persons owned the entire tract, but the real inquiry is, was the land described on the roll by section, township and range, or by any description that will furnish a sure guide for its ascertainment. I submit that the proof clearly identified the land that was sold.

CAMPBELL, J., delivered the opinion of the court.

The validity of the assessment under which the sale was made is to be tested by section 18 of, " An act in relation to public revenue," approved March 5, 1878. It provides, " that no failure to designate the precise locality of any subdivision of land within a section . . . . shall be held to vitiate the assessment, . . . . if the section, township and range . . . . be properly entered upon the roll ; . . . . and it may be shown by parol testimony . . . . to what particular subdivision such assessment . . . . was intended to apply ; and where part of the land in a particular section . . . . has been assessed by a proper description and a portion by a description which does not identify the land, the assessment of that portion which is not properly described, shall be held to embrace all the land in the section . . . . not embraced in the assessment by proper legal subdivisions." The substance of this is that giving section, township and range shall be a sufficient description on the roll for any subdivision of the section, and that parol testimony may be resorted to for the ascertainment of the particular subdivision intended to be assessed ; and that the proper description of part of a section shall make the assessment of the other part of it, by whatever description being insufficient to identify, embrace all the rest of the section. We are not called on now to consider the effect of the

first clause quoted, for there is no evidence in the record as to what land was intended to be assessed. The question is as to the other clause.

It is for the legislature to prescribe the mode of ascertaining the value of property for taxation. Some way of identifying the land taxed is indispensable. Ascertainment of value in some mode directed by law is a constitutional pre-requisite to valid taxation. Art. XII., § 20, of the constitution. Without identification of the land in some way, there cannot be a fixing of value, which is essential as a means of proportioning the burden of taxation. This might be by the number of acres where no element of uncertainty as to the particular land arose from variation in value for different parcels owned by different persons of a given tract, but an assessment of eighty acres of a larger number, where one parcel is valued at one sum per acre, and another at a different sum, is liable to be referred to the one or the other, and makes it impossible to tell what was assessed or at what value.

In this case forty acres of S. E. ¼ were assessed at $2.50 an acre, and one hundred and twenty acres at $1 an acre, and it is impossible to determine at what value the eighty acres sold were assessed, for it is not known which eighty acre parcel was sold. It was eighty of the one hundred and sixty, but was it the forty valued at $2.50 per acre and other forty, or was it eighty acres valued $1 an acre? This element of uncertainty renders the assessment insufficient on its face because of the necessity for ascertainment of value of property taxed. The provision of the act of 1878, quoted above, must be held applicable to assessments which do not create uncertainty as to the charge on the land. The right of the owner to be free from any but his just proportion of taxation according to value cannot be infringed, and the law quoted must be confined in its operation to cases in which no uncertainty exists as to the amount of the charge on property. A man should know whether he has eighty acres, or any other number in a section or other tract, and if his is part of a larger tract, all valued at the same per acre, there is no uncertainty as to the tax, and no injustice or violation of constitutional right in requiring him to know his own, and pay the

charge upon it. But until there is a valid charge there is nothing to pay, and a valid sale cannot be made for failure to pay what was not due.

*Reversed and remanded.*